**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 12-cr-278-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

COLLEEN LORIS,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S SECOND MOTION FOR REDUCTION OF
SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) AND U.S.S.G. § 1B1.13**

---

This matter is before the Court on Defendant Colleen Loris's Second Motion for

Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13

("Second Motion").  (ECF No. 97.)  The Court granted the Government leave to file a

response out of time (ECF No. 100), to which Loris filed a reply (ECF No. 104).  For the

reasons stated below, the Second Motion is granted.

## I.     BACKGROUND

In 2007, in the U.S. District Court for the District of South Dakota, Loris pleaded

guilty to conspiracy to distribute 500 grams or more of a substance containing

methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).  (ECF

No. 1.)  Loris was sentenced to 60 months imprisonment, to be followed by five years of

supervised release.  (*Id*.)  In February 2011, Loris completed her custodial sentence,

and supervised release began.  In July 2012, jurisdiction was transferred to this Court.

(*Id*.)

In April 2013, the Court found Loris to be in violation of her supervised release and consequently sentenced her to eight months imprisonment followed by three years of additional supervised release.  (ECF No. 24.)  Loris was released from custody in March 2014.  (ECF No. 59-1.)

In June 2014, Loris was charged in Gilpin County, Colorado, with manslaughter, intent to distribute a controlled substance, and criminal possession of a weapon.  (ECF No. 45.)  Loris was convicted and sentenced to 32 years imprisonment.  (*Id*.)  Based on these offenses, in February 2016, the Court again found Loris to be in violation of her supervised release.  (ECF No. 48.)  The Court sentenced Loris to 30 months imprisonment, with 18 months concurrent and 12 months consecutive to the 32-year sentence imposed by the Gilpin County Court.  (*Id*.)

Loris previously filed a Motion to Reduce Sentence based on § 102(b)(2) of the First Step Act of 2018, which changed the method by which the U.S. Bureau of Prisons ("BOP") calculates a prisoner's good-time credit.  (ECF No. 55.)  Through counsel, Loris then also filed a Motion for Compassionate Release based on § 603(b) of the First Step Act.  (ECF No. 80.)  The Court denied both motions in May 2020 ("Prior Order") after finding, respectively, that Loris failed to exhaust her administrative remedies and continued to pose a danger to the safety of the community, such that her release would not be consistent with the U.S. Sentencing Commission's (the "Commission") applicable policy statements.  (ECF No. 87.)

Loris now again asks the Court to "reduce her [federal revocation] sentence to time served or, at a minimum, order that her 30-month federal sentence run concurrent to her state court sentence for Gilpin County case number 14CR 59."  (ECF No. 97 at

14.)  Specifically, Loris argues that "extraordinary and compelling reasons" warrant a reduction in her sentence because (1) she has a disabled adult child who requires a guardian and caregiver and (2) she herself suffers from a number of medical conditions that require long-term, specialized care that is not being provided.  (ECF No. 97 at 3.)

## II.    ANALYSIS

Loris once again invokes the Court's authority to grant what is commonly referred to as "compassionate release."  Under the applicable statutory framework:

> The court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

In the Prior Order, the Court concluded that, because Loris is in the custody of the state—not that of BOP—she "cannot be faulted for failing to petition the warden of her facility because there is no federal warden for her to petition."  (ECF No. 87 at 6 (citing *Garza v. Davis,* 596 F.3d 1198, 1203 (10th Cir. 2010) ("A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion would be futile.")).)  For the same reason, the Government "does not raise failure to establish exhaustion as a grounds for denying" Loris's Second Motion.  (ECF No. 100 at 4.)

Thus, the Court proceeds to consider whether it may reduce Loris's term of imprisonment because (1) extraordinary and compelling reasons warrant such a reduction, (2) the reduction is consistent with applicable policy statements issued by the Sentencing Commission, and (3) the factors set forth in § 3553(a) are satisfied. *United States v. McGee,* 992 F.3d 1035, 1042 (10th Cir. 2021).

## A.    Extraordinary and Compelling Reasons

As relevant here, "extraordinary and compelling circumstances" may be based on the medical circumstances of the defendant, including where "[t]he defendant is suffering from a terminal illness." U.S.S.G. § 1B1.13(b)(1)(A).

In the summer of 2017, while Loris was in the custody of the Colorado Department of Corrections ("CDOC"), she began complaining of chest and abdominal pain, difficulty breathing, and night sweats. (ECF No. 80 at 4.) In September 2017, Loris was transferred to a medical facility in Aurora, Colorado, where she was diagnosed with metastatic lymphoma that had spread to her spleen, pancreas, and other organs. (ECF No. 80-1.) The Sentencing Commission specifically cites "metastatic solid-tumor cancer" as an example of a qualifying terminal illness. *Id.*

Loris acknowledges in her Second Motion that her cancer is now in remission. (ECF No. 97 at 7-8.) Nonetheless, she asserts she "continues to suffer ongoing, and at times life-threatening, health complications." (*Id.*) She informs the Court that in April 2022, she became violently ill with acute pancreatitis, requiring her to remain under hospital-level care until November 2022—including a three-month stint in an intensive care unit. (*Id.; see also* ECF Nos. 97-6, 97-7.) To avoid similar complications in the future, doctors have advised her to adopt certain permanent changes to her diet. (ECF

No. 97 at 8-9; *see also* ECF No. 97-8.)  However, she has been unable to do so "because she has no control over the foods available to her" in prison.  (ECF No. 97 at 8.)

As a result of her battles with both cancer and pancreatitis, Loris asserts her body has been significantly weakened, rendering her more vulnerable to simple illnesses and infections.  (ECF No. 98 at 9.)  Moreover, she requires consistent monitoring due to her prior cancer diagnosis, pointing out that "[a]pproximately 20–40% of those with non-Hodgkin's lymphoma experience recurrence."  (ECF No. 97 at 9.) She asserts the BOP has a "troubling history of providing inadequate healthcare for cancer patients," based on audits conducted in 2016 and 2022.  (*Id.* at 9-10; *see also* ECF No. 97-9.)

Loris also newly raises in her Second Motion that she qualifies for a sentence reduction under § 1B1.13(b)(3)(A) because she has a disabled adult child who requires a guardian and caregiver, and his current caregiver's poor health and advancing age has diminished her ability to care for him.  (ECF No. 97 at 3); *see also* § 1B1.13(b)(3)(A) (identifying the "[t]he death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition" as a possible "extraordinary and compelling circumstance").  Specifically, Loris asserts her 26-year-old son has developmental deficits which mean he cannot live independently.  (ECF No. 97 at 6.)  He has relied entirely on his grandmother (Loris's mother) since he was eight years old.  (*Id.* at 5-6.)  Loris's mother is now elderly and suffers from incapacitating chronic obstructive pulmonary disease (COPD) and kidney failure.  (*Id.* at 6.)  According

to Loris, she has no other relatives who can care for her son, including her two adult daughters.  (ECF No. 6-7.)

Notably, the Government has conceded that Loris "can make compelling arguments for . . . 'extraordinary and compelling reasons'" and does not oppose her Second Motion on that basis.  (ECF No. 100 at 6; *see also id.* ("As in 2020, the parties can agree that Ms. Loris has cancer, she is in remission, she has significant health issues, and no one disputes that her son is likely in need of additional care.").)  The Court similarly agrees the foregoing circumstances constitute sufficient evidence of extraordinary and compelling reasons justifying a potential reduction in Loris's sentence.  The Court will thus proceed to analyze the § 3553(a) factors.

## B.    § 3553(a) Factors

Section 3553(a) sets forth a lengthy list of factors for the Court to consider in imposing a sentence, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

The Sentencing Commission also directs that a court may only reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(a)(2).  Under § 3142(g), relevant factors include (1) the nature and circumstances of the offenses and conviction; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger posed by the defendant's release.  The Court finds that the § 3553(a) and § 3142(g) inquiries substantially overlap in this case and will thus analyze them in tandem.

The Court denied Loris's First Motion because it was "not satisfied that [she] is not a danger to the safety of the community."  (ECF No. 87 at 7.)  As a result, the parties have focused significantly on this element in their briefing.  Indeed, that Loris continues to pose a danger to society is the only argument the Government advances to oppose  her Second Motion.  (*See generally* ECF No. 100.)

For her part, Loris argues "she has evolved into a different, better person than the woman who was sentenced by this Court 8 years ago" and is no danger to any other person or the community.  (ECF No. 97 at 3.)  Specifically, she informs the Court that she has participated in many cognitive therapy programs within the CDOC, including Thinking for a Change, Victim Impact programming, Seeking Safety, and Making Choices.  (*Id.*)[1]  Loris also asserts her rehabilitation has "helped her realize how

---

[1] Loris submitted documentation of her completion of these programs in a 2021 *pro se* motion,

economic instability contributed to her recidivism." (ECF No. 97 at 4.) To prevent the same problem from recurring upon her release, she has earned eight professional skills-related certificates at CDOC, three of which were obtained after the Court's denial of her First Motion. (*Id.*) She has also obtained full-time employment working for an image processor, for whom it appears she will be able to continue working upon her release. (*Id.*) Loris also wrote a letter of apology to the family of the victim in her state court case and mailed it to the Offender Apology Bank, where it is available for them to read should they choose to. (*Id.* at 4.)

The Government, for its part, relies heavily on the language of the Court's Prior Order, in which the Court noted Loris's criminal history was "serious and extensive, and includes convictions for possession with intent to distribute 500 grams or more of methamphetamine, child abuse, DUI and careless driving, and multiple thefts." (ECF No. 100 at 6 (citing ECF No. 87 at 7).) The Government further argues that Loris's manslaughter conviction, for which she is currently serving in state custody, was only 10 years ago. (ECF No. 100 at 6.) As such, the Government believes the Court's prior conclusion that Loris "often is, and recently has been, a danger to other persons in a much more direct and violent way" still rings true. (*Id.* (quoting ECF No. 87 at 7-8).)

Loris's lengthy criminal history record and checkered past of course have not changed since the Court's Prior Order. But Loris is now 54 years old and she has been confined for over four additional years since the Court's Prior Order. (ECF No. 104 at 3.) The Court is persuaded by her Second Motion that she has maximized her opportunities to rehabilitate herself during her ten years in state custody thus far.

---

which she subsequently withdrew. (ECF No. 88.)

The Court further observes that, as of the date of this Order, Loris will not be released from state custody until December 2026 *at the earliest*, when she first becomes eligible for parole.  As such, the Court's grant of her Second Motion will not result in her immediate release in any case.  Loris can pose no danger to the community while she remains in state custody for a minimum of an additional 25 months.  Moreover, the precise date of her parole eligibility will continue to be contingent upon her good behavior while she remains in state custody.

After a careful weighing of all the above-referenced factors, the Court concludes that, consistent with the parsimony clause of the sentencing statute, a sentence of time served is sufficient, but not greater than necessary, to achieve the goals of § 3553(a). Accordingly, the Court will grant her Second Motion for a reduction of her federal sentence to time served.

## III.    CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Loris's Second Motion (ECF No. 97) is GRANTED, and her federal sentence is REDUCED TO TIME SERVED;

2.      Loris's request for a hearing on the Second Motion is DENIED as MOOT;

3.      Loris's previously-imposed conditions for her future supervised release remain unchanged, subject to any modifications necessitated by her then-current circumstances; and

4.      The Government is DIRECTED to coordinate with Loris, the Probation Office, and the BOP to facilitate full compliance with this Order.

Dated this 5th day of November, 2024.

BY THE COURT:

_____

William J. Martinez
Senior United States District Judge